UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID MICHELETTI, individually and on behalf of others similarly situated, Plaintiffs<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al., Defendants | Civil Case No. 15-1001 (RCL) |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is defendants' Motion to Dismiss, filed December 7, 2015 [ECF No. 8], plaintiffs' Opposition, filed January 4, 2016 [ECF No. 9], defendants' Reply, filed January 19, 2016 [ECF No. 15], plaintiffs' Sur-Reply, filed February 1, 2016 [ECF No. 17], and other supplemental authorities and responses thereto. Having considered the motion, response, reply, exhibits, supplemental authorities, and the applicable law, the Court grants the Motion to Dismiss in favor of arbitration.

### II. Background

Plaintiff David Micheletti is a resident of Bexar County, where he worked as an Uber driver. Pl. Orig. Pet. [ECF No. 1-5] at 3. Uber is a technology company that, along with its Rasier subsidiaries, provides a platform to connect riders seeking transportation with available drivers. Micheletti activated an Uber account on June 20, 2014. Defs. Mot. at 2. In order to access the Uber platform, drivers must first enter into an agreement with the applicable Raiser entity. *Id.* After signing up, a potential driver must log in with a unique username and password to review the services agreements. *Id.* at 3. To advance past the screen with the hyperlink to the agreement,

drivers must confirm that they reviewed and accepted the agreement by clicking "YES, I AGREE." *Id.* Drivers were not obligated to accept right away; they could access and review the agreement at their leisure. *Id.* Here, Micheletti reviewed and accepted the "Rasier Software Sublicense & Online Services Agreement" twice: first when he initially activated his account ("the June 2014 Agreement"), and again on October 19, 2015 ("the November 2014 Agreement"). With the exception of a choice-of-law provision in the November 2014 Agreement, the agreements contain substantially similar terms.

The June 2014 Agreement contains an arbitration agreement in which drivers and Uber/Rasier agree to arbitrate all disputes arising out of their relationship with Uber:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber . . .
> . . .
>
> **WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION. YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS . . .**
> . . .
>
> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a**

**court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.

. . .

**Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision . . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.**

. . .

This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement. Except as stated in subsection v, above, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

Def. Mot. Ex. C pp. 11-15 [ECF No. 8-1].

Micheletti filed this original action against Uber Technologies, Inc., Raiser LLC, and various unknown defendants (collectively "efendants") on behalf of himself and other Texas Uber drivers, alleging that Uber refuses to pay its drivers a living wage and misrepresents the status and compensation of drivers for their own benefit. Pl. Orig. Pet. at 2. Plaintiffs seek to recover damages

for violations of the Texas Labor Code and common law causes of action such as tortious interference with prospective business relationship, breach of contract, promissory estoppel, unjust enrichment, conversion, unfair competition, and fraud. *Id.* at 3.

Defendants move to compel individual arbitration based on the arbitration agreements that Micheletti—and all plaintiffs—electronically accepted before accessing the Uber platform. Defs.' Mot. at 2. Defendants argue that the agreements are enforceable pursuant to the Federal Arbitration Act ("FAA"), that the claims brought here fall under the scope of those agreements, and that they must be dismissed in favor of arbitration. *Id. See* 9 U.S.C. § 1, *et seq*. Plaintiffs concede that the arbitration agreement is governed by the FAA, but they argue that the agreements should not be enforced because the arbitration agreement—including the delegation provision—is against public policy and unconscionable under California law. Pl. Opp'n. at 2. Defendants counter that Texas law applies, and that the parties agreed to delegate the determination of the enforceability of the arbitration agreement's various terms to an arbitration, and not to a court. Defs. Reply at 10. Thus, according to defendants, this Court may only determine the enforceability of the delegation provision itself, according to Texas law. *Id.*

### III. Legal Standards

The FAA declares written arbitration agreements in any contract involving commerce "valid, irrevocable, and enforceable," unless the terms are unenforceable under general applicable contract law doctrines such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal citations omitted). Parties to

a valid arbitration agreement will be compelled to arbitrate claims that fall under the scope of the agreement unless some public policy or contract doctrine renders those claims nonarbitrable. *Id.*

Importantly, parties may agree to commit those threshold determinations, such as whether an arbitration agreement is valid or enforceable, to an arbitrator. *Id.* A delegation provision is an agreement to arbitrate those threshold issues of "arbitrability," such as whether the parties have agreed to arbitrate or whether the agreement covers a particular claim. *Id.* at 68-69. The delegation provision is an additional, antecedent agreement, and the FAA operates on delegation provisions as it does any other. *Id.* Indeed, if an arbitration agreement includes a valid delegation provision, the district court may not review challenges to other issues of arbitrability because they have been committed to an arbitrator. Unless a defendant challenges a delegation provision specifically, courts must treat it as valid and enforceable under the FAA. *See Rent-A-Center*, 561 U.S. at 72.

"There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Because the FAA operates on delegation provisions "as it does on any other," the same burden is on the party seeking to invalidate. *Rent-A-Center*, 561 U.S. at 68. A delegation provision is valid as long as the delegation is clear and unmistakable and it does not violate some other common law contract doctrine, such as unconscionability. *Id.* at 79; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The validity of an arbitration agreement is a question of state law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004).

## IV. Analysis

Plaintiffs do not dispute assent to the terms of the agreements or the validity of the agreement in its entirety. Pl. Opp'n. at 7 n. 4. Plaintiffs argue "only that the Agreements' arbitration provisions, including the delegation clauses, are unenforceable." *Id.* If the delegation provision is valid, the determination of the enforceability of other provisions was delegated to an arbitrator, and this Court must dismiss under the FAA. *Rent-A-Center*, 561 U.S. at 72. The critical matter before this Court, then, is the validity of the delegation provision itself. *See Rent-A-Center*, 561 at 63; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Banc One Acceptance Corp.*, 367 F.3d at 430 (5th Cir. 2004).

Plaintiffs argue that the court should evaluate the provision under California law, because of a choice-of-law provision in the June 2014 and November 2014 Agreements. Under California law, plaintiffs claim, the delegation provision is unenforceable because it is 1) not clear and unmistakable, and 2) unconscionable. Defendants claim that Texas law should apply, and that the delegation provision is enforceable because it 1) clearly and unmistakably granted issues of arbitrability to the arbitrator, and 2) is not unconscionable.

### a. The Arbitration Agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator.

A delegation provision that gives an arbitrator the authority to resolve disputes relating to the "enforceability" or "validity" of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability. See, e.g., *Rent–A–Center*, 561 U.S. at 71–72; *Aviles v. Russell Stover Candies, Inc.*, 559 Fed.Appx. 413, 414 (5th Cir. 2014); *W.L. Doggett LLC v. Paychex, Inc.*, 92 F.Supp.3d, 593, 597 (S.D. Tex. 2015). Defendants point out that the delegation provision here expressly applies to disputes arising out of or relating to "interpretation or application of this Arbitration Provision, including the enforceability,

6

revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision." Def. Mot. Ex. C p. 12, ¶ 4. Under the arbitration agreement, "[a]ll such matters shall be decided by an Arbitrator and not by a court or judge." *Id.* This is a clear and unmistakable delegation of the authority to determine issues of arbitrability.

Plaintiffs argue that the delegation provision conflicts with other provisions in the Agreement that require disputes or actions in connection with the Agreement to be subject to the "exclusive jurisdiction of the state and federal courts" in San Francisco. Pl. Opp'n at 8. Plaintiffs rely on a California district court opinion—*Mohamed v. Uber Technologies, Inc.*, No. C-14-5200 EMC, 2015 WL 3749716 (N.D. Cal. June 9, 2015)—that found such language rendered the delegation provision unclear and mistakable. *Id.* However, as the Ninth Circuit stated when overruling this opinion, "[t]hese conflicts are artificial." *Mohamed v. Uber Technologies, Inc.*, --- F.3d ---, 2016 WL 4651409 (9th Cir. Sept. 7, 2016). The June 2014 Agreement allowed drivers to opt out of the arbitration agreement. Def. Mot. Ex. C p. 15. Those that did not opt out were still able to file suit for claims that were not covered by the arbitration agreement or for "temporary or preliminary injunctive relief in connection with an arbitrable controversy." *Id.* at 13, 15. It is apparent that the venue/forum selection provision was intended for those purposes, and do not render the express delegation of issues of arbitratibility under the arbitration agreement unclear or mistakable.

### b. The delegation provision is not unconscionable.

Plaintiffs also claim that the delegation provision should not be enforced because it is unconscionable. Pl. Opp'n at 9.

1. **Choice of Law**

The validity of an arbitration agreement, including a delegation provision, is a question of state law. *Banc One Acceptance Corp.*, 367 F.3d at 431. Here, the parties dispute whether California law or Texas law applies. While the June 2014 Agreement has a general choice-of-law provision, it is not provided within the specific arbitration agreement or delegation provision. Rather, the choice-of-law provision is a general term of the June 2014 Agreement, which plaintiffs had to accept by clicking "YES, I AGREE":

> **General**
>
> The interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California.

Def. Mot. Ex. C p. 17 [ECF No. 8-1]. The November 2014 Agreement includes an identical choice-of-law agreement within the arbitration agreement itself. Def. Mot. Ex. D p.41 of 71.

Plaintiffs argue that California law applies because the general choice-of-law provision should apply to the delegation provision. Pl. Opp'n at 7. Defendants argue that Texas law applies because the delegation provision must be severed from the arbitration agreement as a whole, and that the choice-of-law provision thus has no effect on the delegation provision. Defs. Reply at 6 (citing *Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012). Indeed, the Supreme Court has referred to delegation provisions as "additional, antecedent agreements[s] that [are] severable from the remainder of the arbitration agreement." *Rent-A-Center*, 561 U.S. at 70-71. This approach is further reflected in the June 2014 Agreement's own terms: "This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement." Def. Mot. Ex. C p. 15 [ECF No. 8-1]. If the arbitration agreement—which includes

8

no choice-of-law provision— is separate from the rest of the June 2014 Agreement, and the delegation provision is antecedent to the arbitration agreement, then the delegation provision includes no choice-of-law provision either. Although the November 2014 Agreement's arbitration agreement *does* include a choice-of-law provision, the delegation provision is similarly antecedent and severable. Thus, the choice-of-law provisions have no effect on this Court's determination of the enforceability of the delegation provision.[1]

Federal courts must apply the forum state's choice of law rules. In the absence of an effective choice of law provision, § 188(1) of the Restatement (Second) of Conflicts of laws ("Restatement") provides the general rule: "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles listed in § 6." *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) (quoting § 188(1)). Where the contract was signed and performed by a plaintiff who lives in Texas, the laws of Texas apply. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d at 670, 678–79 (Tex. 1990). Here, Micheletti and similarly situated plaintiffs are Uber drivers who live in Texas, signed the June 2014 Agreement in Texas, and drive for Uber in Texas. In determining the validity of the only contract term at issue here—the delegation provision—Texas law applies.

### 2. Conscionability

Under Texas law, arbitration agreements may be *either* substantively or procedurally unconscionable, *or* both. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) (citing *In re Halliburton*, 80 S.W.3d 566, 572 (Tex. 2002)). Unlike in California,

---

[1] That is not to say that the choice-of-law provisions has no effect on the interpretation of the terms of the agreements in future proceedings at arbitration or in a court of law. This Court can make no determinations as to the effect of the choice-of-law provisions on the interpretation of the overarching agreements.

a party need not establish both in order for the provision to be invalid in Texas.[2] "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

### *i.* **The delegation provision is not procedurally unconscionable.**

Whether an agreement is procedurally unconscionable rests on whether there is unfair surprise or oppression. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006). Here, plaintiffs argue that the delegation provision is so buried within the arbitration agreement, and that the drivers were at such a disadvantaged bargaining position, that they either didn't know or were unconscionably pressured to sign the agreement. Pl. Opp'n at 11-12. But absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). Further, a contract term is not procedurally unconscionable just because one party may have been in a less advantageous bargaining position. *In re Palm Harbor Homes*, 195 S.W.3d at 679. Indeed, the "only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002).

---

[2] Under California law, an arbitration agreement, like other contract clauses is unenforceable if it is *both* procedurally **and** substantively unconscionable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), overruled on other grounds by *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 933 (9th Cir. 2013). Because the Ninth Circuit opinion in *Mohamed* found that the contract was not procedurally unconscionable, the Court held that the delegation provision is not unconscionable under California law. --- F.3d ---, 2016 WL 4651409 (9th Cir. Sept. 7, 2016). Thus, even if California law *did* apply, plaintiffs' arguments fail.

10

Here, Micheletti and the other plaintiffs were under no pressure or obligation to even enter the arbitration agreement because the June 2014 Agreement contained an Opt Out clause:

> Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date of this Agreement is executed by you, electronic mail to optout@uber.com . . . or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g. UPS, Federal Express, etc.), or by hand delivery .
> . . .

Def. Mot. Ex. C p. 15.

Plaintiff's argument that the delegation provision was oppressive because the service agreement was too long, or that the drivers were pressured into agreeing to arbitration, is nonsensical and has not even been recognized by California courts. *See Mohamed v. Uber Technologies, Inc.*, --- F.3d ---, 2016 WL 4651409 (9th Cir. Sept. 7, 2016); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002). Therefore, because plaintiffs were not even required to accept the arbitration agreement, and because parties in Texas are bound by the contracts they sign, this Court finds the delegation provision is not procedurally unconscionable.

### *ii.* The delegation provision is not substantively unconscionable.

Plaintiffs argue that the delegation provision is substantively unconscionable because it would subject plaintiffs to "hefty fees of a type they would not face in court" because the arbitration agreement requires costs to be shared "unless otherwise required by law." Pl. Opp'n at 10-11. In Texas, an arbitration agreement may be substantively unconscionable if the existence of large arbitration costs could preclude a litigant from vindicating statutory rights at arbitration. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). A party seeking to invalidate an arbitration agreement

11

bears the burden of showing the likelihood of incurring such prohibitive costs. *Green Tree*, 531 U.S. at 300.

Here, plaintiffs' claims are entirely speculative; they *might* be subjected to paying significant forum fees. But the enforceability of fee-splitting, and power of the arbitrator to award fees and damages are subject to limitation by the terms of the arbitration agreement and the applicable law governing the claims:

> In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law. Any disputes in that regard will be resolved by the Arbitrator.
>
> . . .
>
> The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision.

Def. Mot. Ex. C p. 14

The interpretation of the arbitration agreement, and the determination of the applicable law and what claims even fall under the scope of the provision, was delegated to arbitration. This Court may not speculate as to what fees or awards plaintiffs will incur at arbitration. Indeed, plaintiffs may not incur any arbitration costs at all. Thus, the plaintiffs have not satisfied their burden of establishing significantly greater costs than plaintiffs would incur in litigation. The delegation provision is not substantively unconscionable

### iii. This Court may not touch on whether the larger arbitration agreement violates California public policy.

Finally, plaintiffs argue that the delegation provision is unconscionable because the arbitration agreement contains non-severable waivers that prevent drivers from bringing claims under California laws. For the reasons discussed above, the interpretation of what claims fall under the arbitration agreement and whether the very terms of the arbitration agreement are enforceable, was clearly and unmistakably delegated to arbitration. *See also Mohamed v. Uber Technologies, Inc.*, --- F.3d ---, 2016 WL 4651409 (9th Cir. Sept. 7, 2016) (finding that the district court should not have reached whether the provision's terms regarding California rights of action because it had been delegated to the arbitrator). Thus, this Court may issue no opinion on these challenges.

## V. Conclusion

For the reasons stated above, the parties entered into a valid and enforceable agreement to delegate questions of arbitrability to an arbitrator. The delegation provision is clear and unmistakable, and it is not unconscionable. Thus, it is enforceable, and the plaintiffs' claims here will be dismissed accordingly.

A separate order shall issue.

_____
Royce C. Lamberth
United States District Judge

DATE: 10/3/16